OPINION OF THE COURT
Harold J. Hughes, J.
The defendant moves for an order under CPLR 3211: (1) dismissing both causes of action in the complaint as barred by the three-year Statute of Limitations set forth in CPLR 214 (2); (2) dismissing the first cause of action upon a defense founded on documentary evidence, i.e., an exclusion in the insurance policy; and (3) dismissing the second cause of action for failure to state a viable claim.
The first cause of action alleges that on November 17, 1981 it was reported to the State that petroleum had been discharged from a gasoline storage system located at a Sunoco service station at the corners of Main Street and Maple Street in Port Jefferson, New York, causing contamination of the ground water. The owner of the station was Frank Yglesias who was insured by INA. It is alleged that pursuant to Navigation Law article 12, the New York State Environmental Protection and Spill Compensation Fund paid $34,610.53 for cleanup and removal costs for which INA is liable under Navigation Law article 12. The second cause of action alleges that pursuant to Navigation Law § 192, the defendant is liable to the State for penalties in the amount of $25,000 per day for each day that the violation of the Navigation Law persisted.
Navigation Law article 12 sets up a system to prevent and to rapidly clean up oil spills. Under that statute the State has the obligation to promptly respond to a spill and to pay the cleanup costs out of a special fund. The administrator of the fund can then recover the money expended for cleanup from the person responsible for the discharge and his insurer (Navigation Law §§ 187, 188, 190). Additionally, under certain circumstances, the State can pursue a claim for civil penalties against the discharger (Navigation Law §§ 190,192).
INA contends that since the petroleum spill was reported in November of 1981 and this action was not commenced until April of 1986, it is barred by the three-year Statute of Limitations set forth in CPLR 214 (2) which governs actions "to recover upon a liability, penalty or forfeiture created or imposed by statute”. Plaintiff points out that the Court of Appeals recently held that an action by the State against a discharger to recover money expended by the fund for the *432 cleanup and removal of a discharge is, in reality, one for common-law indemnity and is governed by the six-year Statute of Limitations which accrues upon the last expenditure by the State for the cleanup (State of New York v Stewart’s Ice Cream Co., 64 NY2d 83). INA argues that the holding of the Stewart’s case cannot apply to it because at common law it would not have had a duty to indemnify the State for its insured’s wrongdoing and, therefore, there is no basis for use of the six-year indemnity Statute of Limitations. Furthermore, INA points out that the Court of Appeals has held that direct actions against insurers were not permitted at common law, and are solely a creature of statute (Thrasher v United States Liab. Ins. Co., 19 NY2d 159). INA contends that its only liability to the State is through the operation of Navigation Law § 190, and, since its liability is imposed by statute, the three-year period applies. The court disagrees.
In State Farm Mut. Auto. Ins. Co. v Regional Tr. Serv. (79 AD2d 858, 859) the test of whether the three-year Statute of Limitations set forth in CPLR 214 (2) applies was explained as "Under CPLR 214 (subd 2) the test for a liability created by statute is whether the liability is one which did not exist at common law, or would not exist but for a statute * * * Where a statute merely provides a new remedy, CPLR 214 (subd 2) does not apply”.
The question is, in the absence of Navigation Law § 190, could the State maintain an action against INA for the damages caused by its insured. Under Insurance Law § 3420 (a) (2), the State is authorized to bring a direct action against INA once it has obtained a judgment against the insured that remains unsatisfied. Thus, the State, totally independent of Navigation Law § 190, has the ability to directly sue INA for damages it sustained because of the acts of INA’s insured. Of course, under section 3420 the State would have to obtain a judgment against the insured prior to suit, while in oil spill cases Navigation Law § 190 removes that requirement. By so doing, section 190 is providing a new remedy and, under the State Farm Mut. Auto. Ins. Co. v Regional Tr. Serv. (79 AD2d 858, 859, supra) rationale, CPLR 214 (2) does not apply. Consequently, the applicable limitation period is the six years set forth in CPLR 213 (1) governing actions for which no time limitation is specifically prescribed. The cause of action accrues on the last date that the State sustains damage by paying out of its oil spill fund for damage caused by the insurer’s discharger.
*433 Turning to the second cause of action, before reaching the Statute of Limitations question, it is necessary to decide whether a cause of action is stated. The second cause of action seeks the recovery of a penalty pursuant to Navigation Law § 192, which provides: "Any person who knowingly gives or causes to be given any false information as a part of, or in response to, any claim made pursuant to this article for cleanup and removal costs, direct or indirect damages resulting from a discharge, or who otherwise violates any of the provisions of this article or any rule promulgated thereunder or who fails to comply with any duty created by this article shall be liable to a penalty of not more than twenty-five thousand dollars for each offense in a court of competent jurisdiction. If the violation is of a continuing nature each day during which it continues shall constitute an additional, separate and distinct offense.”
The issue framed by this record is whether Navigation Law § 192 authorizes the imposition of a $25,000 daily penalty upon an insurance company for not promptly paying for the damage caused by an oil spill attributable to its insured. The answer is "No”. First, by resisting payment of a claim, an insurer is not "knowingly” giving "false information” in response to a claim for cleanup and removal costs. Secondly, this court has examined article 12 and its implementing rules and failed to find any provision therein obligating a discharger’s insurer to promptly pay under its policy, despite the fact that potentially viable grounds, such as the exclusion asserted here, may exist to vitiate coverage.
The penalty imposed by section 192 is designed to encourage compliance with article 12. Article 12 imposes obligations upon the handlers of petroleum, not their insurance companies. It is the commercial handler of the petroleum who must obtain the license to transport and store the product and to report upon the operations and activities of the storage facility (Navigation Law § 174). It is the party discharging the oil who is held strictly liable for cleanup costs (Navigation Law § 181). No part of the article states that the discharger’s insurer is strictly liable for the cleanup and removal costs. The insurer’s obligation is defined by the terms of its policy with the insured. Section 190 may raise some confusion on that point by its language which provides: "Any claims for costs of cleanup and removal, civil penalties or damages by the state and any claim for damages by any injured person, *434 may be brought directly against the bond, the insurer, or any other person providing evidence of financial responsibility.”
While a quick reading of the language might lead one to conclude that an insurance company is independently liable for civil penalties, or any other damages sustained by the State or injured persons, that is simply not the case. The liability for cleanup and removal costs, civil penalties and damages is imposed upon the discharger. The insurer must pay only if its policy provides coverage to its insured, the discharger, for those types of claims. For instance, a policy could provide coverage for cleanup costs, but specifically exclude coverage for civil penalties. The fact that section 190 permits the State and an injured party to bring the insurer directly into the action, even prior to the rendition of a judgment against the insured, to determine if the damages and penalties owed by the discharger are covered by the policy does not subject the insurance company to all of the onerous duties and penalties set forth in article 12.
The last issue raised on the motion is whether the action is precluded as a matter of law by a policy exclusion which states that this: "[Ijnsurance does not apply to * * * (a) * * * property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if discharge is sudden and accidental.”
INA argues as a matter of law that this record establishes that the discharge took place over a five-year period and, thus, could not have been sudden and accidental. The court disagrees. The courts have construed the exclusion relied upon by INA to the point of extinction (Allstate Ins. Co. v Klock Oil Co., 73 AD2d 486; State of New York v Aetna Cas. & Sur. Co., Sup Ct, Albany County, Nov. 9, 1984, Cobb, J.). The insurance industry has recognized that the courts have interpreted the words "sudden and accidental” to mean "unexpected and unintended” which interpretation led Justice Cobb in the Aetna case (supra) to determine that even the slow leak of gasoline from a negligently maintained gasoline storage tank could be covered despite the exclusion relied upon by INA. Be that as it may, this court is not in a position to determine as a matter of law that the discharge here was not sudden and accidental. It certainly appears to have been accidental. It could have been sudden. The person reporting the spill to the State gave a statement that after the remedial work done on the site in 1976 he experienced no evidence of gasoline leakage until September of 1981. This statement belies INA’s *435 contention that the leakage was continuous over a five-year period. The precise cause of the spill and whether it was sudden and accidental will be a determination for the trier of the facts.
The motion of the defendant will be granted, without costs, to the extent of dismissing the second cause of action for failure to state a cause of action and will be denied in all other respects.