OPINION OF THE COURT
Harold J. Hughes, J.
The motion of the defendant for summary judgment will be denied.
The complaint alleges that on June 1, 1984, fuel oil spilled from an oil tank located in the cellar of a residence owned by Beatrice Bonesteel. It is alleged that Mrs. Bonesteel had a homeowner’s insurance policy issued by the defendant. It is *1042 alleged that the State through its Environmental Protection and Spill Compensation Fund expended $3,415.77 to clean up the oil spill and that the defendant is strictly liable to reimburse the State for that sum.
The record discloses that a sewer line blockage caused the Bonesteel cellar to flood. A 275-gallon fuel tank was tipped over by the flood, discharging approximately 200 gallons of fuel oil. Mrs. Bonesteel contends that she promptly contacted her insurance broker, the Capital District Insurance Agency, and was advised that there was no coverage under her homeowner’s policy. The Attorney-General contends that the records of the Capital District Insurance Agency reflect Mrs. Bonesteel’s telephone call.
Pawtucket Mutual requests summary judgment upon the arguments that: (1) the strict liability provisions of article 12 of the Navigation Law were never intended by the Legislature to apply to a homeowner; (2) as a matter of law, Mrs. Bone-steel is not the party responsible for the alleged discharge; and (3) the State failed to satisfy a condition precedent of the insurance policy by failing to give timely written notice of the occurrence until almost three years after the event.
Subdivision (1) of section 181 of the Navigation Law provides: "Any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained, as defined in this section”.
Subdivision (14) of section 172 of the Navigation Law defines a "Person” to include "individuals”. Section 190 of the Navigation Law provides in pertinent part that "[a]ny claims for costs of cleanup and removal * * * or damages by the state * * * may be brought directly against * * * the insurer”.
The foregoing statutes provide that an individual is a person as used in the Navigation Law, and that any person is strictly liable for the cleanup costs attributable to oil discharged by them. Defendant’s first argument is that, as a matter of law, a homeowner cannot be an individual or person as those terms are used in article 12. The argument lacks merit. If the Legislature wanted to exclude homeowners from the class of persons made strictly liable under the Oil Spill Act, it would have used precise language to do so, as it did when excluding homeowners from the strict liability imposed by section 240 of the Labor Law.
Defendant’s second argument is that Mrs. Bonesteel did not *1043 discharge any petroleum, as no act or omission on her part caused the spill. Subdivision (8) of section 172 of the Navigation Law defines discharge to mean "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum”. Defendant argues that the oil spill was caused either by an act of God or by an omission of the City of Troy. The spill took place on June 1, 1984. In her affidavit, Mrs. Bonesteel states that severe flooding of her cellar was occurring throughout the latter part of May of 1984. Yet, despite actual knowledge of flooding in her cellar so severe that the water was flowing out her basement windows, Mrs. Bonesteel took no action to prevent her oil tank from being tipped by the flooding waters. For instance, she could have had the oil tank drained. She could have employed pumps on a round-the-clock basis to drain the flood waters. She could have done many things, but by all accounts she did nothing. Her omission, unintentional or otherwise, was a cause of the spilling of petroleum.
Defendant’s final argument concerning prompt written notice cannot be decided on this motion. An insurer has the burden of proof on the issue of whether timely written notice of a loss has been given (De Forte v Allstate Ins. Co., 81 AD2d 465). Moreover, when an insurance company relies upon specific policy language to defeat coverage, it must set forth or refer to that clause as an affirmative defense in the answer (Zeller v Preferred Mut. Fire Ins. Co., 9 Misc 2d 855, 859), which was not done here. Moreover, even if the issue had been properly placed before the court by way of pleading it as a defense, the record presents a question of fact as to whether prompt written notice was prevented by the actions of defendant’s agent.