■ DOMERMUTH PETROLEUM EQUIPMENT AND MAINTENANCE CORPORATION, Plaintiff, v HERZOG & HOPKINS, INC., Defendant and Third-Party Plaintiff-Respondent. LAWRENCE GRANT et al., Third-Party Defendants; NATIONAL SURETY CORPORATION, Third-Party Defendant-Appellant. — Levine, J. Appeal from an order and judgment of the Supreme Court at Special Term (Bradley, J.), entered November 20, 1984 in Albany County, which, inter alia, granted third-party plaintiff's cross motion for summary judgment against third-party defendant National Surety Corporation.

On December 16, 1982, Herzog & Hopkins, Inc., delivered fuel oil to the residence of third-party defendants Lawrence and Ethlyn Grant. Later that day, the Grants informed Herzog & Hopkins that their fuel oil tank, which had recently been serviced by Herzog & Hopkins, had ruptured, discharging its contents into their basement. Herzog & Hopkins then contracted with Domermuth Petroleum Equipment and Maintenance Corporation to clean up the Grants' basement.

Herzog & Hopkins subsequently reported this incident to its insurer, National Surety Corporation, requesting payment of Domermuth's bill in the amount of $26,367.12. In reply, National Surety sent Herzog & Hopkins its check for $15,000, together with a document entitled a "Loan Receipt", stating that

the sum was "a loan only" and that National Surety admitted no liability under Herzog & Hopkins' policy. It further stated that the "loan" would be repayable only if and to the extent that Herzog & Hopkins obtained payment from any third party, and it directed Herzog & Hopkins, at National Surety's expense, to sue any third party who might be liable for the loss. Herzog & Hopkins remitted the $15,000 to Domermuth. Domermuth then sued Herzog & Hopkins for the balance due of $11,367.12. When National Surety refused to defend Herzog & Hopkins, the latter commenced a third-party action against the Grants and National Surety. Special Term ultimately granted summary judgment in favor of Domermuth against Herzog & Hopkins and granted Herzog & Hopkins' cross motion for summary judgment against National Surety, holding that the oil cleanup cost was covered by Herzog & Hopkins' insurance policy.

On this appeal, National Surety argues that it was not liable for the cleanup expenses because the policy in question did not apply "to liability assumed by [Herzog & Hopkins] under any contract or agreement". It contends that Herzog & Hopkins *voluntarily* undertook to clean up the oil spill, thereby forming a contract for which National Surety was not liable. We cannot agree. Herzog & Hopkins' cleanup of the oil spill was not a voluntary act, but was instead an obligation imposed by statute.

Pursuant to Navigation Law § 181 (1): "Any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained". Further, "discharge" is defined as: "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters" (Navigation Law § 172 [8]). "Waters" includes all "bodies of surface or groundwater, whether natural or artificial" (Navigation Law § 172 [18]).

National Surety does not refute this statutory imposition of strict liability for cleanup expenses on those who have discharged oil which might drain into surface or groundwater. However, it argues that these statutes did not compel Herzog & Hopkins to clean up the oil spill in question here since (1) it is not clear that Herzog & Hopkins caused the oil spill and (2) there is no proof that the oil was ever in danger of seeping into any surface or groundwater.

Both of these contentions are unavailing. First, under the Navigation Law, no proof is required of a specific wrongful act or omission which directly caused the spill in order to impose

liability. It is sufficient and uncontested that Herzog & Hopkins, as the deliverer of the oil and the repairer of the tank, set in motion the events which resulted in the discharge (*see, Merrill Transp. Co. v State of New York,* 94 AD2d 39, 41, *lv denied* 60 NY2d 555). Second, there is no need for specific proof that the oil was ever in danger of seeping into protected water in order to render the above statutes applicable. Judicial notice can be taken of the common knowledge "that oil can seep through the ground into surface and groundwater * * * and thereby cause ecological damage"(pp 42-43). In the instant matter, the oil leaked into a subground-level basement where there was a substantial likelihood that, if not cleaned up, it would proceed to seep into the surrounding groundwater. Accordingly, Herzog & Hopkins was obligated by the terms of Navigation Law article 12 to clean up the oil spill, and National Surety was, in turn, obligated to indemnify it for the costs thereof.

Order and judgment affirmed, without costs. Main, J. P., Casey, Yesawich, Jr., Levine and Harvey, JJ., concur.